In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-25-00346-CR**
_____

**ERIC RAY-MARTIN THIBODEAUX, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 128th District Court**
**Orange County, Texas**
**Trial Cause No. A220613-R**
_____

**MEMORANDUM OPINION**

A grand jury indicted Appellant Eric Ray-Martin Thibodeaux ("Appellant" or "Thibodeaux") for arson, and the indictment alleged that Thibodeaux "intentionally start[ed] a fire by igniting the interior confines of an attached garage, with intent to damage and destroy a habitation located at 2891 Highway 62, Orange, Texas, knowing said habitation was located on property belonging to another, to wit: Enrique Perez[.]" *See* Tex. Penal Code Ann. § 28.02(a)(2)(A). Thibodeaux pleaded

1

"not guilty" to the offense, but a jury found him guilty as charged in the indictment. After hearing punishment evidence, the jury assessed Thibodeaux's punishment at twenty-two years of confinement and assessed a $5,000 fine. *See id.* §§ 12.32, 28.02(d)(2). The trial court sentenced Thibodeaux in accordance with the jury's verdict and ordered that the sentence in this case run consecutively to his sentence in trial cause number A220610-R in the 128th District Court of Orange County, Texas. Thibodeaux timely appealed.

Evidence at Trial

Testimony of Enrique Perez

Enrique Perez testified that he lives in Orange County. Perez recalled that on the morning of June 4, 2022, he was alone at his house and removing drywall in his infant son's bedroom. According to Perez, he was "in and out" of his garage and shed in the backyard that morning and did not notice anything wrong with his garage, he was not running a dryer at any point that day, and he did not smell smoke or notice any electrical issues in the garage. Perez recalled that the back door to his house was closed but unlocked because he was going in and out and did not want to keep locking and unlocking the door. He testified that as he was removing the drywall and listening to music, the bedroom door started to "crack[] open[]" and he thought it was his wife arriving home early. He recalled seeing a shotgun "start raising through the door," and Perez went and grabbed the barrel of the shotgun and lifted it up,

2

shutting the door with his other hand. When the door closed, he heard someone say, "Get back[,]" and the person with the gun fired the gun through the door, hitting Perez in the arm. Perez described the person that shot him as a white male with "short to no hair[]" with no shirt on and tattoos across his chest area and face, and at trial Perez identified that person as the defendant, Thibodeaux.

Perez testified that after he was shot, he managed to get outside of the house through an open window in the bedroom which he had used to throw out drywall. After getting outside, he ran across the backyard and jumped over the fence to get to his neighbor's house. Perez realized the neighbors were not home, and as he was coming back over the fence, he noticed his wife had arrived home and was in the driveway, and the shooter was still inside the house. His wife, not realizing that someone was in the house, had taken the car seat with their infant son out of the car and put it inside the house. Perez testified that he quickly went inside the house and retrieved his son from the living room and told his wife to go to the neighbor's house and push the button on their Ring doorbell camera because she could not find her phone to call the police. Perez explained that he had left his phone in his son's bedroom. The neighbor was able to call the police. According to Perez, he did not see anyone leave his residence, and his wife and son stayed at the neighbor's house while he was on the other side of the house. Once law enforcement arrived, Perez

3

reported what had happened. While law enforcement began securing the residence, an ambulance arrived and Perez was transported to the hospital for treatment.

Perez explained that his father-in-law picked him up from the hospital later that day, and then Perez's brother-in-law called and showed him a Facebook post and informed him that Perez's house was engulfed in flames. According to Perez, he had never seen Thibodeaux prior to that day. Perez testified that he believed that the gun Thibodeaux shot him with was Perez's own shotgun that Perez kept in his closet. Perez recalled that when he was shown footage of Thibodeaux being pulled out of Perez's residence, he realized that Thibodeaux was also wearing Perez's shirt, jeans, and boots without his permission, and Perez was also informed that Thibodeaux had taken Perez's wallet. Perez testified that he did not give Thibodeaux permission to burn his house down. On cross-examination, Perez testified that when he was at his neighbor's house, he could still see his backyard, but when he went into the front yard to get his son out of the house, Perez could not see the backyard. He recalled that flammable liquids, such as paint thinner and spray paint, were stored in his garage.

Testimony of Sergeant William Cowart

Sergeant William Cowart with the Orange County Sheriff's Office testified that he was on duty that day and received a call about an incident at Perez's address. He recalled that he arrived around ten minutes after the shooting, he first made

4

contact with Perez's wife and child, and Perez's wife was shocked, and she directed Cowart to her husband who was on the other side of the yard. Sergeant Cowart testified that he approached Perez and inquired into his injury, and Perez informed him that a white male came in the house and shot him with his own shotgun. Sergeant Cowart testified that while setting up a full perimeter around the residence to talk peacefully with the armed male in the residence, he directed Perez to medical assistance that had arrived on the scene, and Perez was transported to the hospital for treatment. According to Cowart, that was the last time he saw Perez that day. After "a number of hours[,]" deputies heard "a loud popping noise" from one end of the residence that, to some of law enforcement on the scene, sounded like a gunshot. Cowart recalled that the SWAT Team was planning on approaching and law enforcement began observing smoke coming from the top of the roof through a roof vent. When the fire was too large for safe entry by law enforcement and it was determined that the armed person inside would be incapacitated because of smoke inhalation, the fire department was cleared to put out the fire. The sheriff's department assisted a man matching the description provided by Perez, later identified as Thibodeaux, out of the north window of the home, and he was shirtless and having difficulty breathing. Thibodeaux was then transported from the scene, and ultimately the Criminal Investigations Division for the Orange County Sheriff's Office took over the investigation. Sergeant Cowart testified that at the scene, law

5

enforcement did not see the fire prior to seeing the smoke coming from the residence, and the fire got out of control right before Thibodeaux was pulled out of the residence. According to Sergeant Cowart, based on his vantage point at the scene as well as his understanding of the other officers' vantage points once they arrived on the scene, no one other than Thibodeaux entered or exited the residence.

Testimony of Deputy Travis Gentry

Deputy Travis Gentry with the Orange County Sheriff's Office testified that he arrived at the scene shortly after Cowart, and fire department and EMS personnel were already on the scene when he arrived. Deputy Gentry was instructed to talk to neighbors at the scene to get information, and he assisted in securing the perimeter of the house. Deputy Gentry testified that after a few hours on the scene, law enforcement heard a "pop[]" and did not know if it was a gunshot or if "something blew up[,]" and then they saw smoke coming from the roof of the residence and near the garage. Deputy Gentry recalled that the home was fully engulfed about fifteen minutes after hearing the "pop." According to Deputy Gentry, while he was on the scene for four and a half hours and monitoring the house, he did not see anyone enter or exit the residence until the fire spread throughout the residence. Deputy Gentry also assisted in pulling Thibodeaux out of the residence. Deputy Gentry recalled that just before Thibodeaux was pulled out of the window, he heard yelling and the window that they pulled Thibodeaux from was "flexing[,]" which Gentry believed

6

was due to Thibodeaux beating on the window. A video recording from Deputy Gentry's body camera that day depicting what transpired once the house was engulfed in flames and showing Thibodeaux being pulled from the house was admitted into evidence and played for the jury.

Testimony of Constance Jordan

Detective Constance Jordan with the Jasper County Sheriff's Office testified that she arrived at the scene after the SWAT Team, and after Perez had been transported to the hospital and Thibodeaux had been removed from the residence through the master bedroom window. According to Jordan, after the fire department cleared the house and some of the smoke from the house, she and another detective went into the house. Photographs of the interior and exterior of the home after the fire were admitted into evidence. Detective Jordan recalled that outside of the house she observed clothing that she was told was the victim's clothing. According to Detective Jordan, a photograph taken inside the master bedroom after she collected a box of shotgun shells and a loose shotgun shell from the carpet depicts a "void" where the smoke could not get to the floor, and in her opinion, the remaining "void" indicated that the box of shotgun shells and the loose shotgun shell were present before the smoke penetrated that portion of the residence. According to Detective Jordan, photographs also depict a large hole in a bedroom door to what appeared to be the baby's room that was being renovated, and the hole looked like a hole from a

7

fired shotgun, and the other side of the door had an exit hole. The bedroom window was also open with construction debris on the ground outside of the window.

Testimony of Sergeant Wesley Mask

Sergeant Wesley Mask with the State Fire Marshal's Office testified that he investigated the scene in this case along with the primary investigator, Deputy Denton, who is no longer employed with the office and did not complete a report in this case. Sergeant Mask explained he was limited in his investigation to the evidence collected by Denton which Mask conceded was not ideal, and he completed a report in this case. Mask testified that in this case there were no videos of the fire starting and no photographs of anyone starting a fire at the residence. According to Sergeant Mask, forensic samples were taken and the results came back in February 2023, and the samples were positive for "medium petroleum distillate" which is common with paint thinners, mineral spirits, or some charcoal lighters found in garages. Sergeant Mask testified that he was not able to specifically look at any one piece of evidence in this case to determine how the fire was started, but he agreed he used the broader "totality-of-the-circumstances approach[]" in this case. Sergeant Mask explained that he looked at photographs taken by Denton and reviewed the Orange County Sheriff's Office's witness statements and offense reports in this case, and Mask determined the fire originated in the garage and moved to the ceiling and throughout the remainder of the structure. He ruled out weather as a source of the

fire because there were not any storms or lightning strikes in the area on that day. He observed from the photographs that the natural gas meter was intact with no visual abnormalities, and that the power pole, transformer, and the fuses for electrical service were intact with no visible abnormalities and no indications of failure. The appliances in the house and garage that were photographed were also eliminated by Sergeant Mask as the source of the fire because the sustained damage to them was consistent with being burned in the fire but not the source of the fire, and the breakers in the distribution panel were intact so they were not a source of the fire. Sergeant Mask stated that he also reviewed witness statements stating that an armed individual had barricaded himself in the garage, there was a noise like "muffled gunshots or the attic access slamming[]" from the garage, and the witnesses smelled smoke and then saw the flames. Sergeant Mask testified that in his expert opinion, the house fire was "incendiary[,]" meaning "a fire that occurred in an area or under circumstances in which a fire should not have transpired[.]" On cross-examination, he stated that "[i]t's possible but not probable[]" that the fire was not incendiary, and he agreed that because he was relying on evidence already collected he may not have all the evidence.

After the State rested its case, Thibodeaux moved for a directed verdict, which the trial court denied. The defense rested its case, and the jury heard closing

9

arguments. After deliberating, the jury found Thibodeaux guilty of arson as alleged in the indictment.

<u>Sufficiency of the Evidence and Denial of Motion for Directed Verdict</u>

In his first issue, Thibodeaux challenges the sufficiency of the evidence supporting the jury's guilty verdict, and he argues the trial court erred by not granting Thibodeaux's motion for directed verdict. Thibodeaux argues that although he was inside the residence at the time the structure was on fire, there is no evidence connecting him to the fire and his mere presence at the location is insufficient to establish guilt beyond a reasonable doubt.

Thibodeaux challenges both the legal and factual sufficiency of the evidence supporting the jury's verdict, but the Court of Criminal Appeals has determined that factual sufficiency no longer applies in criminal cases. *See Brooks v. State*, 323 S.W.3d 893, 902, 912 (Tex. Crim. App. 2010) (concluding that there is "no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the . . . factual-sufficiency standard, and these two standards have become indistinguishable[]" and deciding that "the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt[]"). In reviewing the legal sufficiency of the evidence to determine whether the State proved the elements of the offense beyond

a reasonable doubt, we apply the *Jackson v. Virginia* standard. *Id.* at 894-95, 912 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under that standard, a reviewing court must consider all the evidence in the light most favorable to the verdict and determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Id.* at 902; *see also Jackson*, 443 U.S. at 319. "A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony." *Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018). As the trier of fact, the jury is the sole judge of the weight and credibility of the witnesses' testimony, and on appeal we must give deference to the jury's determinations. *Brooks*, 323 S.W.3d at 899, 905-06. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Id.* at 899 n.13 (citing *Jackson*, 443 U.S. at 319). On appeal, we serve only to ensure the jury reached a rational verdict, and we may not substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In our review, we consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

As relevant to this case, a person commits arson if he starts a fire with intent to destroy or damage a habitation knowing that the habitation was within the city limits of an incorporated city or town. *See* Tex. Penal Code Ann. § 28.02(a)(2)(A).

The jury heard Perez testify that there were no signs of smoke or flames prior to Thibodeaux entering the house and that Perez was not running the dryer and that he did not notice any electrical issues in the garage. The jury heard Sergeant Cowart's testimony that law enforcement did not see the fire prior to seeing the smoke coming from the residence, the fire got out of control right before Thibodeaux was pulled out of the residence, and that based on Cowart's and other officers' vantage points at the scene, no one other than Thibodeaux entered or exited the residence. The jury heard Deputy Gentry's testimony that after a few hours on the scene, law enforcement heard a "pop[,]" and he did not know if it was a gunshot or if "something blew up[,]" and then they saw smoke coming from the roof of the residence and near the garage, and the house was engulfed in flames within fifteen minutes after the "pop." Sergeant Cowart and Deputy Gentry both testified that a popping noise was heard when the only person in the house was Thibodeaux, and just prior to the smoke and flames. The jury also heard the testimony of Detective Constance Jordan who testified that in her opinion the box of shotgun shells and the loose shotgun shell were present on the floor before the smoke penetrated that portion of the residence. Next, the jury heard the testimony of Sergeant Mask who

12

completed the fire investigation report and testified that weather, appliances, and electrical issues with the house were ruled out as the source of the fire. He explained to the jury that in concluding that the fire was "incendiary" (a fire that occurred in an area or under circumstances in which a fire should not have transpired), he considered those sources he had ruled out, along with the knowledge he gained from offense reports and witness reports that Thibodeaux had broken in the house, he was the only one in the house and was barricaded in the garage where the fire started, and there was a noise like "muffled gunshots or the attic access slamming[]" in the garage just prior to the smoke and flames. The jury could have given weight to Sergeant Mask's testimony that the fire was incendiary, and to Sergeant Cowart's and Deputy Gentry's testimony that no one other than Thibodeaux was seen entering or exiting the house in the hours before the fire started, and the testimony about a popping sound inside the home which preceded the smoke and flames. Intent can be inferred from a person's actions, and the law presumes that a person intends the natural and probable consequences of his voluntary acts. *Farrell v. State*, 837 S.W.2d 395, 399 (Tex. App.—Dallas 1992), *aff'd*, 864 S.W.2d 501 (Tex. Crim. App. 1993), *overruled on other grounds by Angleton v. State*, 971 S.W.2d 65, 69 (Tex. Crim. App. 1998). On this record, the jury could reasonably infer that Thibodeaux set the fire and intended to damage or destroy the house as the natural and probable consequence of setting it on fire. *See id.* Considering all the evidence in the light

13

most favorable to the verdict, we conclude the jury could have found beyond a reasonable doubt that Thibodeaux started the fire with intent to destroy or damage Perez's home knowing that the home was within the city limits of an incorporated city or town. *See Brooks*, 323 S.W.3d at 902; *see also Jackson*, 443 U.S. at 319.

"A motion for instructed verdict is essentially a trial level challenge to the sufficiency of the evidence." *Smith v. State*, 499 S.W.3d 1, 6 (Tex. Crim. App. 2016). Therefore, "[w]e treat a point of error complaining about a trial court's failure to grant a motion for directed verdict as a challenge to the legal sufficiency of the evidence[,]" and the *Jackson v. Virginia* standard of review applies. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996) (citing *Jackson*, 443 U.S. at 319). Because we have concluded that the evidence presented at trial was sufficient under *Jackson v. Virginia* to support the jury's guilty verdict, we overrule Appellant's first issue.

Cumulative Sentence

In issue two, Thibodeaux argues that the trial court erred in ordering Thibodeaux's sentences be cumulated with his previous sentence of confinement for what he alleges was part of the "same criminal episode." Thibodeaux argues section 3.03(a) of the Texas Penal Code prohibits the trial court from cumulating his sentence in this case upon his sentence in trial court cause number A220610-R, a sentence that Thibodeaux states he received for aggravated assault/burglary of

14

habitation.[1] We review a trial court's decision to cumulate sentences under an abuse-of-discretion standard. *See* Tex. Code Crim. Proc. Ann. art. 42.08; *Nicholas v. State*, 56 S.W.3d 760, 764-65 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). The test for abuse of discretion is whether the trial court's action fell within the zone of reasonable disagreement. *Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

Article 42.08 of the Texas Code of Criminal Procedure is a broad grant of authority that allows trial courts to order that a defendant's sentence run consecutively or concurrently. *See* Tex. Code Crim. Proc. Ann. art. 42.08. Section 3.03(a) of the Texas Penal Code as applicable here, however, limits the trial court's discretion in some situations to cumulate or stack sentences as follows:

> When the accused is found guilty of more than one offense arising out of the same criminal episode *prosecuted in a single criminal action*, a sentence for each offense for which he has been found guilty shall be pronounced. Except as provided by Subsection (b),[2] the sentences shall run concurrently.

---

[1] We note that we issued a separate opinion affirming the conviction of Thibodeaux in the appeal of trial cause number A220610-R wherein Thibodeaux was convicted of burglary of a habitation. *See Thibodeaux v. State*, No. 09-23-00369-CR, 2024 Tex. App. LEXIS 6385, at *1 (Tex. App.—Beaumont Aug. 28, 2024, no pet.) (mem. op., not designated for publication). In that appeal, Thibodeaux's court appointed attorney only raised one issue pertaining to the assessment of fees, and we affirmed the judgment as modified. We note that the indictment in the burglary case indicates it pertained to the burglary of Perez's home that occurred on or about June 4, 2022.

[2] Subsection (b) in effect at the time of the offense is not applicable to the instant case. *See* Act of May 19, 2021, 87th Leg., R.S., ch. 249, § 1, 2021 Tex. Gen. Laws 524, 524-25 (amended 2025).

*See* Act of May 25, 1995, 74th Leg., R.S., ch. 596, § 1, 1995 Tex. Gen. Laws 3435, 3435 (amended 2023) (emphasis added); *see also Pousson v. State*, Nos. 09-09-00233-CR & 09-09-00234-CR, 2010 Tex. App. LEXIS 375, at *4 (Tex. App.—Beaumont Jan. 20, 2010, no pet.) (mem. op., not designated for publication). So, concurrent sentencing is required when the defendant is found guilty of more than one offense arising from the same criminal episode where the accused is *prosecuted for multiple offenses in a single criminal action*. "If either predicate is not proven, the sentences can be cumulated, which is also referred to as stacking the sentence." *Lykins v. State*, No. 09-13-00216-CR, 2014 Tex. App. LEXIS 10621, at *3 (Tex. App.—Beaumont Sept. 24, 2014, pet. ref'd) (mem. op., not designated for publication) (citing *Ex parte McJunkins*, 954 S.W.2d 39, 40-41 (Tex. Crim. App. 1997); *Reese v. State*, 305 S.W.3d 882, 885 (Tex. App.—Texarkana 2010, no pet.)).

Here, Thibodeaux concedes on appeal that the sentence onto which the trial court stacked Thibodeaux's sentence in this case involved a separate trial in cause number A220610-R wherein he was found guilty of burglary. *See LaPorte v. State*, 840 S.W.2d 412, 415 (Tex. Crim. App. 1992), *overruled on other grounds by Ex parte Carter*, 521 S.W.3d 344, 347 (Tex. Crim. App. 2017) ("[A] defendant is prosecuted in 'a single criminal action' whenever allegations and evidence of more than one offense arising out of the same criminal episode . . . are presented in a single trial or plea proceeding, whether pursuant to one charging instrument or several[.]").

Because the two cases here were not prosecuted in a single trial, the trial court did not abuse its discretion by cumulating or stacking the sentence it gave Thibodeaux in this case on top of his sentence in the other. *See id.*; *Reese*, 305 S.W.3d at 884-85. We overrule Appellant's second issue.

Having overruled Appellant's issues, we affirm the trial court's judgment.

AFFIRMED.

LEANNE JOHNSON<br>
Justice

Submitted on July 28, 2026
Opinion Delivered August 12, 2026
Do Not Publish

Before Johnson, Wright and Chambers, JJ.